Good morning, everyone. Morning, morning. Let's cheer up. We didn't hear you. Good morning. Before we actually begin arguments, let me introduce our visiting judge. Judge Paul Huck from the Southern District of Florida is visiting with us. We're very pleased that he's here to help us. I'm pleased to be here because the temperature in Miami is about 94. Okay. Our first case up for argument is Jin v. Barr. Mr. Combley. Muzio. Great. Muzio. I'm sorry. That's right. May it please the court. Franco Muzio for petitioner Jinshi Jin. With the court's permission, I'd like to reserve two minutes for rebuttal. Ms. Jin came to the United States at 22 years old without her family. Could you hold on a second? Make it cooler. A little warm. The whole courthouse is warm. Especially in the robes. All right. Let's start all over again. Okay. Great. Ms. Jin came to the United States at 22 years old without her family and with limited education, hoping to escape persecution suffered at the hands of the Chinese government. In May of 2010, Chinese officials broke into her home, detained her for several days, beat her until she fell unconscious, and forced her to sign a statement promising to give up her Christian faith. Upon release, her family, fearing for her life, arranged for smugglers to bring her to the United States. Four years later, Ms. Jin had the opportunity to testify through an interpreter regarding her experiences in China before an IJ. The IJ recognized that this type of persecution would typically entitle an applicant to asylum. The IJ, however, erroneously determined that Ms. Jin was incredible. The BIA affirmed that determination relying on three reasons. Those three reasons are the only reasons currently before the court, and I plan to focus my argument on them, but given the limited amount of time, if there's anything the court would like me to focus on now, I'm happy to do so. Why do we only focus on the three? Okay. Great. That the BIA addressed. Okay. So the first reason the government concedes on appeal is not supported by substantial evidence. No, no, no. Oh, go ahead. Go ahead, Judge Robinson. Why don't we consider all of the adverse credibility determinations made both by the IJ and the BIA? Why don't we look at the full picture? Thank you for clarifying. I think Tekel is very clear on this point, that the court reviews only the reasons explicitly identified by the BIA and then examines the reasoning articulated in the IJ's decision as to those reasons in particular. But if the BIA specifically affirms in the adverse credibility determination made by the IJ, why can't we look through to the IJ's decision to see what the BIA was affirming? I think you can, Your Honor. But I think that Tekel clearly notes that you only look at the IJ's decision as to the reasons that the BIA identified as most significant because we don't want the court to assume which reasons the BIA was relying upon and which reasons it wasn't. And I think here there is no doubt that the BIA only identified portions of the IJ's decision and not the decision in its entirety. Now, as I recall, there was a follow-up case to Tekel called Lye. Is that right? It makes the same point? I'm aware of a follow-up case. I might get the pronunciation wrong, but I believe it's Nanzi. And I don't think that that case is applicable here. And that wasn't an asylum case reviewing an adverse credibility determination. The decision assessed whether the BIA had considered it. So in my sort of following up on Tekel, there is a case called Lye v. Holder, which makes the same point. Oh, yes, yes, Lye. Sorry, I was in the Morgan world, not the Tekel world. Yeah, Lye followed up on Tekel and reaffirmed the same holding, that we only look to the reasons that are specifically identified by the BIA. And so I think that this is not a controversial standard. I think it's been articulated several times by this circuit. And even if some stray use of the phrase, for example, were enough to signal a wholesale adoption in some cases, I don't think this is that case. Because the BIA's decision doesn't stop at just identifying a few discrepancies. It then goes on to say that Jin did not adequately explain the noted discrepancies in the BIA's decision. And so I think the BIA here clearly was only relying upon a few of the reasons in the IJ's decision and not all of them. Okay, so if we start with the three reasons offered by the BIA, what's wrong? Why shouldn't we uphold them? Okay, so the first reason, the cooking school discrepancy, the government concedes on appeal that it's not supported by substantial evidence. Jin offered a reasonable explanation for that discrepancy, and the IJ never addressed it, and the BIA never addressed it. Wait a minute. My review of the record indicates on page seven of his order, he specifically addressed that in some detail. And during the testimony, I'm trying to think what page that is. Anyway, asked specifically a number of questions challenging her credibility, it seemed to me. So both in the transcript and his order, he dealt specifically with that issue. The cooking school discrepancy, Your Honor? Okay. So Jin offered an explanation for why she — Page 83 to 84 of the transcript and page seven of his order specifically discusses the cooking school. So I believe that the cooking school, Your Honor, is discussed at the very first paragraph of page 83 in the administrative record. During her testimony at the merits hearing, the IJ questioned Jin on whether she was doing anything else during her time in China. Initially, Jin did not say that she was attending a cooking school. But when the IJ followed up, she said, yes, yes, I was attending a cooking school. The reason why I didn't offer this initially was because I thought you were referring to academic study when you asked me if I was studying anything. In her oral decision, the IJ never addressed that explanation, and she never addressed it at the merits hearing either. She never said, oh, that's not a reasonable explanation for this reason or that reason. And this circuit requires that the IJ give a specific and cogent reason for rejecting a petitioner's reasonable explanation. Again, the government has conceded this point on appeal, that there was no reason given for rejecting this reasonable explanation. So I think that that reason is out. And I think that all that leaves are the inconsistencies related to the administrative penalty decision, specifically a one-day date discrepancy regarding the date of Jin's arrest and then a trivial inconsistency regarding the location of her arrest. Let me ask a question. Even though the government has conceded that point, if I don't agree with the government, can I still consider that? I believe you can, Your Honor. I'm looking at page 7 of the immigration judge's order. Yes. And it specifically discusses that and indicates that she rejected that argument, not as clearly and cogently as one might like, but certainly it's a clear implication. Your Honor, I don't think she anywhere notes the explanation in her decision. And I think that this circuit's law says there has to be a specific and cogent reason for it. And so as you just said, maybe it wasn't as specific as we might like. I think that's enough to remand for at least clarification on this point from the IJ because she never addressed it in her opinion. Well, I'm looking at the opinion. She describes, first of all, the cooking school and the fact of the inconsistency and concludes in the paragraph, first paragraph of page 7. However, she indicated she had forgotten to mention anything about the cooking school during her testimony in this court until she was specifically asked about it. I mean, doesn't that imply that there was real concern about the veracity of that? No, Your Honor, because that misstates the Petitioner's testimony. She didn't say she forgot about the cooking school. What she said was that, I thought you were asking me about academic study, not vocational study or not a hobby. And the IJ never addressed that specific explanation. It was the only explanation she offered. She never said, oh, I forgot to mention this. In fact, she was never asked about the cooking school until the very end of her hearing, so she never had an opportunity to discuss it. The BIA doesn't address this at all. Neither in the IJ's opinion nor in the BIA's opinion does anyone say anything about Jen's explanation that she thought she was referring to academic study. Well, going back to where the BIA considered all the inconsistencies are alleged inconsistencies, isn't the law that if the BIA uses only examples, allow this court to consider other particular examples when they adopt the immigration judge's opinion? Your Honor, the government has pointed to— The Morgan case, particularly. Yes, the Morgan case. Thank you. That's the case the government relies on for this principle. I don't believe it stands for that. What Morgan said is that the BIA appeared to adopt the IJ's decision. And it did so because not only in that case did the BIA give examples from the IJ's opinion, but it also spoke as though the adverse credibility determination was, quote, controlling in denying the applicant's motion for remand. So I think that case is clearly not what we have here. The IJ never—excuse me, the BIA never spoke as though the IJ's decision was controlling. It said, for example, and it listed a few reasons. But the use of the phrase, for example, could mean anything. It could mean that here are a few reasons and I am reserving more, or it could be an exhaustive list. And the only way that we can know if it's an exhaustive list or not is by making assumptions about what the BIA meant to do with the use of that phrase. And this Court has repeatedly held that where the BIA's decision is vague, we shouldn't assume. I'd also return to the point I made before, Your Honor, that the BIA later in its decision said that Jin never explained the noted inconsistencies. So I don't think this Court can look beyond the BIA's decision in this case. We would agree with you on this, that we only looked at the BIA's decision. What's the relief that you ask? There would be a remand to the BIA for further proceedings. Yes, Your Honor. I believe that the Soto Olarte case that is cited in Petitioner's briefing is directly on point here on this issue. Where the Court thinks that there's a reasonable opportunity that some other reason cited by the IJ could give the BIA a reason to deny the application, then remand is the appropriate course here. You want to say? Well, you only got eight seconds. Can I ask one question? You didn't really delve into what I think is the strongest finding of adverse credibility, and that's on the address. Was the IJ required to accept the explanation as to the discrepancy in the address? No, Your Honor. The IJ was not. But the IJ didn't signal whether she did or she didn't. In fact, I read the record as saying that the IJ did accept the explanation. On page 85 of the administrative record, the Court says the Court might be inclined to accept that explanation for this discrepancy in the record, but it does not explain the one-day date discrepancy. So the Court said, you offered a reasonable explanation for this, and I'm not going to reject it, but it doesn't deal with this one-day date discrepancy. The BIA? What did the BIA have to say about that? The BIA was entirely vague about this issue. It did not address Jin's explanation for it at all. And, again, this returns to the point that I made earlier, that this Court has repeatedly held that you have to provide a specific and cogent reason for rejecting a petitioner's explanation. And here, no one provided a reason for rejecting that explanation. I think remand would be appropriate to give the BIA an opportunity to provide that reason. If it's remand, then the BIA or the judge can determine whether living there eight months and not knowing the address was, in fact, a subject of an inconsistency or a lack of credibility. I think that the BIA In fact, I was surprised at that comment. I read the comment or interpreted it a little differently than you did, that the comment was made by the immigration judge. Maybe that's okay, but there are so many other things. I don't have to even deal with that. That's how I interpreted it. I think that's a reasonable reading, Your Honor. But, again, that's not a specific reason for rejecting the explanation. It just says, look, there are other things I can focus on. And so if that's the reason this Court now wants to rely on to affirm, I think that would be improper because there was no reason given for rejecting the reasonable explanation. Okay. I'll give you a minute for rebuttal, but let's hear from the government. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, my name is Monica Twombly, here on behalf of the respondent, the U.S. Attorney General. Substantial evidence supports the agency's adverse credibility determination in this case. The IJ reviewed the total evidence in the petitioner's testimony in light of the totality of the circumstances. The Board then reviewed the immigration judge's decision for a clear error. This Court reviews that determination plus the record as a whole, including the immigration judge's decision, under the deferential standard of substantial evidence. This Court is entirely correct in that the immigration judge repeatedly referred to other inconsistencies throughout the record. The Board then looked to the totality of the immigration judge's decision. What's different in this case versus Tekla is that the immigration judge, I'm sorry, the Board, appeared to adopt the entirety of the decision. But is that good enough to appear to adopt the entirety of the decision? Aren't we limited to the decisions or the adverse credibility determinations that are specifically articulated by the Board? That is true, Your Honor. However, I would state that this Court nevertheless will look at the entirety of the record in reviewing that. So even if first the government's position is not that the one issue or the issues are only limited to the Board's opinion, because this case, as was in Morgan, the Board generally affirms the immigration judge's decision, then lists, for example, a few reasons for doing so, and then does that throughout the decision. But, Counsel, how do we deal then with the language in Lye and Tekla that says a reviewing court looks solely to the reasons specifically? And that language is used articulated by the BIA. It doesn't give us the authority to do a global search of the record. Well, Your Honor, I would state that the Tekla decision and the Board's decision in those cases are different because they include limiting language. That's not present in this case. The Tekla decision— What limiting language is in Tekla that you think is not present in this case? The Tekla decision stated most significantly, which implies that there are certain issues that were in the Board's decision— or, I'm sorry, that were in the immigration judge's decision that the Board didn't rely on. That's not the case here. We have simply a general statement affirming the immigration judge's adverse credibility determination and then go on to list examples of why taken from the immigration judge's decision. However, even if this Court were inclined to find that Tekla controls here, we still have to look at the record in its totality, including all of the issues related by the immigration judge, because the analysis is based on the totality of the circumstances, and I think that's clear from the immigration judge's decision. So, Counsel, if you think that Tekla and Lye are distinguishable in the context of adverse credibility, what case do you cite for the proposition that we look at the totality of the circumstances when determining whether or not the adverse credibility determination is supported by substantial evidence? What case are you relying on? Well, Your Honor, we have this statute to start with. Post-Real ID Act cases are based on the totality of the circumstances, and then we also have cases such as RISC. What's your strongest case to support your argument that Tekla and Lye do not control this review and that we look to the totality of the circumstances in reviewing the adverse credibility determination? What's your strongest case? Your Honor, I would still state that Morgan controls in this case. Assuming you're limited to the three identified by the BIA, what is your strongest inconsistency? Your Honor, the strongest inconsistency in this case is the dates as reflected on the administrative penalty decision. The administrative penalty decision states that the petitioner was arrested on May 1, 2010. Petitioner testified that she was arrested first on May 2, 2010, and then her attorney noted the difference in her testimony and stated, oh, well, actually, Your Honor, I apologize. I misstated that. She first stated that she was arrested in 2009. Then her attorney, noting the discrepancy, stated that she was arrested in 2010. Then after noting that difference, petitioner, instead of accepting that and stating, oh, yes, I made a mistake, she actually challenged her attorney and stated, where does the statement that she provided say 2010? And then her attorney showed her her own declaration, and that is the point that she admitted that her testimony was incorrect and she had made some sort of mistake. In addition, the address difference is at issue here regarding the administrative penalty decision. So, Do you mean Park Street? Park Street, yes. Petitioner never testified that she lived on Park Street. She provided a different address in her application, and then only on cross-examination was she asked, well, why does the administrative penalty decision conflict with your application? And she admittedly speculated that maybe the police gave that excuse or maybe, I'm sorry, maybe the police mistook or generalized the address because it was colloquially known as Park Street. The immigration judge rejected those findings based on But did the immigration judge reject the findings? What's your response to opposing counsel's observation that the immigration judge said she might be inclined to accept an explanation? Well, Your Honor, I think it's one thing to say that she might be inclined to accept an explanation, but that doesn't mean that she did, and she stated in conjunction with the dates. I think this is a central theme to the immigration judge's decision, is that she consistently relies on the totality of the circumstances. But the difficulty with that is that if the date is considered not to be significant enough to support an adverse credibility determination, then if it was a combination of the two and one false, then they both fall. Your Honor, I would respectfully disagree with that proposition because that then, one, violates the totality of the circumstances approach, and two, it's essentially a piecemeal interpretation of the evidence. But that's how the IJ couched it, though. We're left with the record that we have, and the IJ couched that as that she might be inclined to accept that explanation of the address, but for the date discrepancy. Mm-hmm. So it appears that the IJ was combining them for an adverse credibility determination. Your Honor, I agree with that. But I would also say that the immigration judge repeatedly referred to the remainder of the record saying, I agree that perhaps this explanation could be plausible, but in the totality of the circumstances or in relation to all the other inconsistencies in the record. And this is a record that has petitioner testifying repeatedly as to incorrect dates, as to when she entered the United States, when she was arrested. She testified inconsistently with her documentary evidence that she provided. And instead of confronting those inconsistencies affirmatively, then she gave some examples of why they may not suffice. I would agree with you, counsel, if the IJ had relied on those inconsistencies, but the IJ did not rely on those inconsistencies specifically, and neither did the board. Your Honor, for the record, we're talking about two different addresses here. We're talking about the Park Street inconsistency, and we're talking about living in Massachusetts at an address for eight months and not knowing that address. Yes, Your Honor. But that was not cited as a basis for the adverse credibility determination. I understand that. But I thought the immigration judge said, I might accept the Massachusetts situation. I don't recall. Is there a record that suggests that she said she would accept the Park Street explanation? I don't recall. Your Honor, how the immigration judge framed it was that it was essentially a plausible explanation. For the park? For the park. Yes. But in conjunction with the date and in light of all the other inconsistencies present in the record. In addition, petitioner in this case failed to corroborate those moments where she did have inconsistencies. And in light of her incredible testimony, the petitioner here was not entitled to notice. That's another portion of the petitioner's argument is that she was entitled to notice of corroboration. However, it's the government's position that she was never entitled to notice. Even if she were, it's the government's position that she was given ample notice because the one-year bar came at issue at the inception of the case. Counsel, you cited to Morgan as your strongest case to support the proposition that we look at the entire record when determining an adverse credibility determination. So, tell me the language in Morgan specifically that you're relying upon. The issue in Morgan was the... Well, first tell me the language and then you can explain why you're relying on that language. Okay, Your Honor. If I have just one moment. And I see that my time has concluded. Go ahead. I want you to answer Judge Rawlinson's question. Your Honor, it's the language about how the board's decision appears to adopt the immigration judge's decision. Correct. Do we have that in this case? That the board adopted the IJ's at... In Morgan it says there is an ambiguity because the BIA decision appears to adopt the immigration judge's credibility determination and the opinion. Do we have that here? Your Honor, I would say that we do because we have a blanket affirmation of the conclusion by the immigration judge. We affirm the immigration judge's adverse credibility determination and then the board goes on to state, for example, and then gives a few reasons out of the many reasons that were cited by the immigration judge. Generally, when we see the adoption of the IJ opinion, it's done explicitly. The board routinely adopts the IJ decision. Isn't it curious that that wasn't done here, yet you're arguing that the board adopted the IJ opinion? Your Honor, I have two points in answer to that question. First, most... You see a lot of these cases. I understand, and I hate to say in my experience because I know that doesn't compare. However, the board is very explicit in its decisions as to what issues that it discards and what issues that it adopts. In this case, the board didn't specifically limit this decision to only those issues. But did it adopt the IJ's adverse credibility determination specifically? Your Honor, I think that goes to my second point, where in Parada... Could you give me a yes or a no? Did it adopt the IJ's adverse... Explicitly, no. I acknowledge that. Explicitly, no. However, I would also point to Parada from 2018, where this court cited Morgan and attached... I apologize. Reviewed a nexus finding based on the board's general adoption or affirmation of the past persecution finding of the immigration judge. And similarly to that, it's a similar situation as we have here, where Parada, the board decision, didn't explicitly adopt or didn't explicitly state anything about the nexus finding. However, this court reviewed the nexus finding in relation to the generalized statement of affirming the past persecution, which is similar to this case here. Thank you, counsel. Thank you. Four points, Your Honor. Number one, the reasons that weren't adopted by the BIA are not within the scope of this review. I think that's clear from Techley and Lay. I think the Morgan case is easily distinguishable, and I have reviewed every case that cited Morgan, and there is no case in this circuit that I have seen that has allowed the adoption wholesale of an IJ opinion... Based on nothing more than the use of the phrase, for example. Number two, dealing specifically with the issue that Judge Huck raised, the address discrepancies, the IJ accepted Jin's explanation for the Massachusetts address discrepancy on page 83 of the administrative record. And then she also appeared to accept Jin's explanation for the address discrepancy related to Park Street on page 85 of the administrative record. So it's kind of a conditional acceptance. Is that fair? I don't think I would call it conditional, Your Honor. I think I would say... Was it unconditional? I'm sorry? Was it unconditional? No, no, no. I think it was just, look, I think that this could be a reasonable explanation, so I'm going to focus on other things. It sounds conditional because she said, I thought, if it weren't for these other discrepancies, I might find that plausible. Yeah, exactly. So she may or may not. We don't know, and that's why, again, I think remand is the appropriate course here. We just don't know what the IJ would have done or wouldn't have done. The government cites the one-day... On remand, I guess everything is in play again, then? You're starting to scratch? You can remand on an open record, Your Honor, yes, I believe so. The government cites the one-day date discrepancy as its strongest discrepancy in this case, and in doing so, it tries to sneak in the 2009 versus 2010 discrepancy. The BIA never raised that in its decision, not once. So I don't think Jin's inconsistent, momentary inconsistency regarding whether these events occurred in 2009 or 2010 is currently before the court. The only date discrepancy that is is the one-day date discrepancy, and this is inherently trivial. If the court needs to realize why it is so, it needs to look no further than the BIA's decision itself. On the third paragraph of the BIA's decision, the BIA states that Jin testified that the police came into her home on May 1st. On the fourth paragraph, the very next paragraph, the BIA states that Jin testified that the police came into her home on May 2nd. The BIA made the same error, the same one-day error that it faulted Jin for, and I just don't think that's appropriate. I believe that remand is the course here. Okay, thank you, counsel, very much. We appreciate your arguments, and the matter is submitted at this time.
judges: Paez, Rawlinson, Huck